(110 So. 178)

No. 26044.

## HEEB et ux. v. CODIFER & BONNABEL, Inc.

(Oct. 5, 1926. Rehearing Denied Nov. 2, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Damages ☞85.**

Under Civ. Code, arts. 1935, 2117, provision in contract for sale of land that on failure to pay any of installments vendor could retake land and retain payments was void.

**2. Damages ☞85.**

Law does not sanction imposition of punitory or exemplary damages by contract or otherwise.

**3. Damages ☞85.**

Although Civ. Code, art. 2117, recognizes penal clause in contract as secondary obligation, nature of penalty is by way of compensation for damages and not as punishment.

**4. Vendor and purchaser ☞93—Sales.**

Where buyer of land had defaulted in payments, vendor could, under Civ. Code, arts. 2045, 2046, cancel agreement of sale.

**5. Vendor and purchaser ☞105(2)—Sales; vendor canceling contract of sale for failure to make payments and claiming improvements held liable to purchaser for value of materials and workmanship (Civ. Code, art. 508).**

Under Civ. Code, art. 508, where vendor for failure of purchaser to make payments canceled contract of sale and did not demand to have improvements removed, and insisted that plaintiff's demand for payment for them be rejected, he was liable for value of materials and price of workmanship.

**6. Vendor and purchaser ☞105(2)—Sales.**

Where vendor canceled sale agreement for failure to make payments and denied purchaser's right to improvements, it was not necessary for plaintiffs suing for their value to show vendor had disposed of property.

**7. Vendor and purchaser ☞105(2)—Sales.**

In purchaser's action to recover payments on land and for value of improvements after cancellation of contract by vendor, in absence of contrary proof, it must be assumed that payments for labor and material shown by evidence were made for material and workmanship used in improvements.

**8. Vendor and purchaser ☞105(1)—Sales.**

In purchaser's action to recover payments on land and for value of improvements after cancellation of contract by vendor, vendor will be entitled to credit for paying legally recorded liens on property.

Appeal from Civil District Court, Parish of Orleans; William H. Byrnes, Jr., Judge.

Action by Emil Heeb and wife against Codifer & Bonnabel, Inc. From a judgment for less than sued for, plaintiffs appeal. Affirmed in part, and reversed and remanded in part.

F. F. Teissier, of New Orleans, for appellants.

Hugh S. Suthon and Fred Zengel, Jr., both of New Orleans, for appellee.

THOMPSON, J. This is a suit to recover an amount paid on the purchase price and an amount expended in the construction of a bungalow on certain lots of ground described in the petition—the aggregate amount being $2,438.71.

The demand arises out of the following facts:

On January 23, 1918, the parties entered into a written agreement by which the defendant agreed to sell and the plaintiff Mrs. Heeb agreed to buy three unimproved lots located in Jefferson parish.

The price was $825, of which amount $82.50 was paid at the time the agreement was signed and the balance was to be paid in monthly installments, for which the plaintiff executed 36 notes.

The agreement stipulated that the deed conveying the lots would be executed when all of the installments of the purchase price were paid in full.

It was further provided that in the event the purchaser should fail to promptly pay any one of said monthly installments, the whole amount of the balance due would at

the option of the seller immediately become due and exigible; or the seller should have the right, without the necessity of placing the purchaser in default, to appropriate to itself, as liquidated damages, all amounts that may have been paid by the purchaser.

It was provided, however, that before the seller would be authorized to forfeit and appropriate the amounts paid on account by the purchaser, the seller should give to the purchaser 30 days' notice of his intention so to do.

The plaintiff took possession of the lots and immediately entered into a contract with one Curtis to erect a bungalow on said lots at a cost of $1,800, which was subsequently increased on account of extra work to $1,986.

As the work on the building progressed the plaintiff paid to contractor and certain laborers and materialmen at different times the sum of $2,196.02, which was in excess of the contract price.

The building was not quite completed when the contractor, Curtis, abandoned the work some time in March or April.

All payments due on the purchase up to July 1st were paid by the plaintiff, which, together with the cash down payment, amounted to $185.75. No payments thereafter were made by the plaintiff, and on September 6, 1918, the defendant notified the plaintiff that she was in arrears in the payments, and that if payment was not made within 30 days the defendant would be compelled to enforce the penalty provided in the contract by canceling the "bond for deed" and applying the amount previously paid as liquidated damages.

The plaintiff denies receiving the notice, but the evidence shows that the notice was sent by registered mail to her street address and a receipt card purporting to bear her signature was returned to the sender.

The plaintiff made no further payments after the month of June, 1918, and the de-fendant took possession of the lots with the improvements thereon, and, according to the allegation of the petition, sold said property to one Mason on May 27, 1919.

The district judge held that the forfeiture clause in the contract was null and gave plaintiff judgment for the $185.75 paid on the purchase price. The balance of plaintiff's demand was nonsuited for the reason that plaintiff had not satisfactorily proven her demand.

In his reasons for judgment the judge says that it is obvious that under no theory of the case should the amount of damages plaintiff sustained be measured by the amount of money which they paid to the contractor and the materialman.

[1] We agree with the district judge that the forfeiture clause in the agreement was null and void because not warranted in law, was arbitrary, unreasonable, and without consideration. The option granted to the vendor to cancel the agreement to sell in case the purchaser defaulted in any of the payments was but declaratory of a legal right which the vendor has in every sale or agreement to sell.

"A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagement." C. C. art. 2046.

"The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed." C. C. art. 2045.

The case is not analogous to Pruyn v. Gay, 159 La. 982, 106 So. 536. In that case the contract provided that the failure to make the payments when due should ipso facto nullify and abrogate the contract and all sums paid should be considered as rental for the use of the property. The evidence showed that the amounts paid and forfeited did not amount to a fair rental of the property during the period of occupancy by the purchaser.

In the instant case there was no agreement that the amounts paid on the purchase price should be applied as rental if default was made in the subsequent payments. The lots had no rental value.

The forfeiture was to be absolute, without reservation, condition, or consideration, on the mere failure of the purchaser to pay any one of the small monthly installments.

Under this forfeiture clause if the plaintiff had paid $805.25 on the price and defaulted on the last installment of $19.75, the vendor could have retained the ownership of the property and the $805.25 paid thereon, thereby imposing upon said purchaser a penalty of $805.25 for the failure to pay the sum of $19.75.

[2] The law does not sanction the imposition of punitory or exemplary damages by contract or otherwise, but only such as are in their nature and character compensatory.

[3] While a penal clause in a contract is recognized by the Code as a secondary obligation, entered into for the purpose of enforcing the performance of a primary obligation (article 2117), still in its very nature the penalty is by way of compensation of the creditor for the damages he sustains by the nonexecution of the principal obligation and not as a punishment for the violation of the contract or for the failure to perform the obligation.

The inequity, unreasonableness, and illegality of such a penal clause as here sought to be enforced is so obvious as to scarcely need citation of authority.

We may quote, however, from Griffin v. His Creditors, 6 Rob. 216:

"If, then, any penalty or damages were agreed on, it must necessarily have been entirely for the purchaser's default or delay to pay the money. There is, in our law, a marked difference between the damages which may be stipulated for the breach of an obligation to pay money, and an obligation to give a thing or perform an act.

"Where the object of a contract is anything but the payment of money, the parties may determine the sum that shall be paid as damages for its breach, and courts of justice will not interfere with such agreements."

But it is otherwise when the contract is to pay a sum of money. The law has provided that no damages exceeding 8 per cent. per annum on the amount that was to be paid can be stipulated. Article 1929 of the Civil Code (article 1935, present Code), declares:

"The damages due for delay in the performance of an obligation to pay money are called interest.

"The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more."

We are unable to agree with our learned brother that under no theory of the law and facts of the case can the plaintiffs' right to recover be measured by the money paid to the contractor and materialmen.

The principal cause of action propounded by plaintiffs is that acting under an agreement to purchase they caused a residence to be built upon the property at an expense to them of $2,196.02, and that the defendant in the exercise of the option granted in the agreement of sale canceled the sale and took possession of the lots and improvements and appropriated the improvements as its (defendant's) property.

[4] The right of the defendant to cancel the agreement cannot be questioned. The plaintiffs had defaulted in the payments and put it beyond their power to enforce specific performance, but such failure to pay did not forfeit to the defendant the ownership of the improvements placed on the property.

[5] The whole theory of the defense is that the defendant had the right to cancel the contract, and when it did so the plaintiffs had no interest in or on the property and no concern therewith, and it has prayed that the plaintiffs take nothing whatever for the improvements placed on the property.

The plaintiffs caused the improvements to be made under the agreement of purchase, and this with full knowledge of and without the slightest objection from the defendant. The plaintiffs must therefore be held to have acted in good faith and with the intent of ultimately paying for and becoming the owner of the lots as. improved by them.

[6] As the defendant has denied any claim or right of the plaintiffs·to the improvements and denied the right of the plaintiffs to claim the value thereof, it must be held that the defendant has elected to take the improvements with the lots, and in this view it was not necessary for the plaintiffs to show that defendant had disposed of the property.

The Code provides that where edifices have been made by a third person evicted but not sentenced to make restitution of the fruits, because such person possessed bona fide, the owner shall not have a right to demand the demolition of the works, * * * but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil. C. C. art. 508.

And where the owner, as in this case, takes possession of the improvements with the lots on which such works are .erected and elects to claim such improvements, then such owner becomes liable to the person placing the improvements on the property for the value of the materials used in the building and the price of workmanship, without regard to the greater or less value which the property may have acquired by reason of the improvements. C. C. art. 508.

We know of no law which gives to the owner of land the right to take and hold the improvements placed thereon by another person, even without such owner's knowledge and even though the party making the improvements be a naked trespasser, and to appropriate such improvements to his own use without paying for the same as hereinabove indicated.

But that is precisely what the defendant is attempting to do in this case.

The plaintiffs have by this suit called on defendant to pay for such improvements; the defendant has not elected to have the improvements removed, which it had the right to do, but has specifically denied any claim to such improvements by the plaintiffs and insists on plaintiffs' demand for payment to be rejected.

The defendant by such course must be held to have elected to keep the improvements as a part of the lots, and owes the plaintiff for the value of the materials and the price of workmanship.

[7] The undisputed evidence is that the plaintiff paid to the contractor and to various laborers and materialmen the sum of $2,196.02 in constructing the building on defendant's lots. It is true the contractor abandoned the work before it was completed. The contractor may have been irresponsible, as the judge says, but the fact remains that the building was 90 per cent. completed when it was abandoned, and the defendant has not attempted to show that the payments made by plaintiffs were not used on the building.

The payments were made to the contractor and to the laborers and materialmen, and the house was erected as stated.

In the absence of any contrary proof, it must be assumed that the payments were made for material and for workmanship on the particular house in question.

The plaintiffs were not interested in any other house or in any other building contract.

The defendant in its answer alleged that the building was incomplete and was affected with liens for materials, and on the trial offered to prove the existence of such liens, but on objection the evidence was excluded.

[8] Of course if the defendant had to pay any legally recorded liens on the property, then the defendant will be entitled to credit for such amounts so paid, on the amount defendant may be held to owe the plaintiff.

As we have concluded to remand the case, the question of the amount plaintiff has paid for the construction of the building, the cost of materials, and price of workmanship will be left open for such additional proof as the plaintiffs may desire to offer, with the right of defendant to offset said amount by proof of any legal claims the said defendant may have had to pay on account of recorded liens affecting said property.

For the reasons assigned, it is ordered that the judgment in favor of plaintiffs for $185.75 be and it is affirmed. Otherwise the judgment is set aside and the case remanded to the lower court, to be proceeded with as herein indicated.

The defendant to pay the costs of this appeal.