## VICTOR v. LEWIS et al.*
### No. 14959.

Court of Appeal of Louisiana. Orleans.
Oct. 29, 1934.

P. M. Milner, of New Orleans, for appellant.

O'Niell & O'Niell, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit against Ben L. Lewis, a real estate agent, and his surety, the Fidelity & Deposit Company of Maryland, in which judgment for $1,334.26 is asked against both defendants in solido. From a judgment as prayed for, the defendant Fidelity & Deposit Company of Maryland alone has appealed.

The following facts are established by the record: On the 12th day of April, 1921, the defendant Ben L. Lewis entered into an agreement with J. W. Billingsley and William Winans Wall, styling themselves the Industrial Trust Syndicate, whereby Lewis was appointed sales agent for the purpose of selling 76 lots belonging to Messrs. Wall and Billings-

*Rehearing denied 158 So. 25.

ley in the Third district of the city of New Orleans. Lewis agreed to sell the property upon a basis of $300 net to the owners for a stated commission, to collect all the payments made by the purchasers, and to remit to the owners from time to time as stipulated in the agreement. A so-called "bond for deed" was to be prepared by Lewis "and countersigned by agent designated by syndicate." If Lewis succeeded in selling 60 lots at the expiration of six months from the date of the contract, it was to be automatically renewed for another six months, and Lewis, it was agreed, should bear all expenses in making the sales and collect the partial payments. There was a stipulation in the contract to the effect that "Lewis shall have the privilege of taking over the lots of any delinquent purchaser at the time of cancellation of purchaser's contract by paying to Syndicate the amount (less commission) then due on purchaser's contract and assuming the obligations of purchaser's contract." One of the persons to whom Lewis sold a lot was the plaintiff, John Victor, who on July 23, 1923, bought lots E and F in square 1301 and agreed to pay therefor $1,130 at the rate of $10 per month. Victor's agreement to purchase, or "bond for deed," was executed on the 23d day of July, 1923, and contained the usual provisions found in such contracts. Victor failed to record his "bond for deed," as, apparently, did all of the other purchasers under similar contracts. He took possession of the lots immediately, cleared them, and constructed some sort of a dwelling thereon at an expense of $250. He continued to pay Lewis $10 per month more or less promptly and also paid the taxes. On the 8th day of November, 1928, the Industrial Trust Syndicate, by means of a sale and resale through the Italian Homestead, sold the entire property, including the Victor lots, to Ben L. Lewis for $56,000, all of which was borrowed from the homestead, with the result that a mortgage for that amount rested upon the property. On the 24th day of December, 1931, the homestead, through foreclosure proceedings which it had instituted, became the owner of the property and the plaintiff was ordered to vacate. Victor was not informed of the sale and mortgage of the property and continued to make payments under his contract. When Lewis took title to the property on November 8, 1928, Victor had paid $600. He continued his payments to Lewis and to Lewis' successor, the Ben L. Lewis Corporation, which was organized about October 1930, until he had paid in all the sum of $940 and $144.26 in taxes, a total of $1,084.26.

This suit is for the return of the amount paid, including taxes and the cost of the building erected on the lots, or $1,334.26.

No defense was made by Lewis and judgment was rendered against him by default. When sworn as a witness on behalf of the defendant surety company, Lewis admitted his obligation to plaintiff and declared his intention to reimburse him for his loss.

The responsibility of the surety company must be determined by a consideration of the terms of the surety bond issued to Ben L. Lewis in accordance with the terms of Act No. 236 of 1920. It is not claimed that the bond is any broader than the statute, and, since it could not be any narrower, we turn to the statute itself and find that the bond required must be "conditioned that such person, firm, partnership, association or corporation shall well and truly carry out the objects and purposes for which said agency, office or business shall have been established, and that such person, firm, partnership, association or corporation shall honestly conduct said business and shall pay all damages which may result from his or their actions as such real estate agents or brokers; and that any one who may have been injured or damaged by said agent or broker by any wrongful act done in the furtherance of said business or by any fraud or misrepresentation by said agent or broker shall have the right to sue for the recovery of such damages before any Court of competent jurisdiction." (Section 16.)

The question, therefore, is whether Ben L. Lewis was guilty of "any wrongful act" as a real estate agent which has damaged plaintiff, John Victor.

In denying liability, counsel for the surety company vigorously contend that Lewis was without culpable fault in the transaction; that, as the agent of and owner of the property, he accounted to the owner for the payments made by Victor, including the money paid for taxes; that Lewis was under no obligation to record the bond for deed, and that, if Lewis' act in acquiring title to the property and mortgaging it is subject to criticism, it cannot affect the surety company, because in that transaction Lewis acted in his individual capacity and not as a real estate agent; and, finally, that in the bond for deed there is a proviso to the effect that default in the payment of three consecutive monthly installments shall have the effect of forfeiting all payments made on account of the property to the owner, and that on December 15, 1924, plaintiff was in arrears more than three months, and hence he is not now entitled to

claim any benefits under the contract. In the alternative it is said that the contract provides for the payment of interest on the deferred payments at the rate of 7 per cent., which should be allowed and would result in a material reduction of plaintiff's claim.

■ Taking up these defenses in what we believe to be their logical order, we will first notice the contention of defendant which amounts to an exception of no cause of action to the effect that Victor's failure to make three monthly payments deprives him of all benefits under the agreement of sale. It is sufficient to say, concerning this contention, that this provision has been held to be against public policy and invalid. Heeb et ux. v. Codifer & Bonnabel, Inc., 162 La. 139, 110 So. 178, 180.

■ The next defense we will notice is that which concerns itself with the distinction between the acts of an agent in his individual capacity and those in furtherance of his agency as affecting the liability of the surety. We have held that, where a real estate agent takes title to property in his own name as a part of his business of real estate agent and as a facility for conducting his business, which he deems advisable or expedient, his surety is liable for his misconduct, notwithstanding the fact that the property which he sells or offers for sale is in his own name. Zeller v. Chetta (La. App.) 148 So. 99. In our opinion the placing of the title to the tract of land originally in the name of the Industrial Trust Syndicate in the name of Ben L. Lewis was in furtherance of his original plan, scheme, or project for the marketing of the property. This is evident from the testimony of Lewis as well as from the surrounding circumstances. He stated that it was his intention to carry out these contracts for the sale of the property and would have done so if he had been able to collect a sufficient amount to satisfy the homestead, the holder of the mortgage, and that these purchasers, or, at least, Victor, looked only to him in the transaction. We therefore conclude on this point that Lewis and Lewis' bondsman are responsible for the effect of the homestead sale, if there is in that transaction any wrongful act prejudicial or damaging to the plaintiff.

As we said in Boisseau v. Fidelity Union Casualty Company, 149 So. 175, 176: "It must be conceded that the surety on a real estate agent's bond is not liable for his civil obligation, or for errors of judgment committed in the proper conduct of the real estate business, and the surety is only liable under the conditions mentioned in the bond for negligence, or for some wrongful act, or fraud on the part of its principal which causes loss to his customer."

In Ballentine's Law Dictionary we find the following:

"Wrongful Act.—Any act which in the ordinary course will infringe upon the rights of another to his damage, unless it is done in the exercise of an equal or superior right. See Brennan v. United Hatters of N. A. 73 N. J. Law, 729, 65 A. 165, 9 L. R. A. (N. S.) 254, 261, 118 Am. St. Rep. 727, 9 Ann. Cas. 698.

"The words are comprehensive enough to include negligent acts, but they are intended primarily to cover cases where the act was wanton or was intentionally committed, or where one may have counseled or procured another to do it, when, in contemplation of law, the act of counseling or advising makes the wrongful act his own. See Lewis' Adm'r v. Taylor Coal Co., 112 Ky. 845, 66 S. W. 1044, 57 L. R. A. 447, 450."

Bouvier's Law Dictionary (Baldwin's Library Ed., 1928) defines a wrong as follows:

"An injury; a tort; a violation of right.

"In its broad sense, it includes every injury to another, independent of the motive causing the injury; Union Pac. Ry. Co. v. Henry, 36 Kan. 570, 14 P. 1.

"A wrong is an invasion of right to the damage of the party who suffers it. It consists in the injury done, and not commonly in the purpose or mental or physical capacity of the person or agent doing it. It may or may not have been done with bad motive; the question of motive is usually a question of aggravation only; Williams v. Hays, 143 N. Y. 447, 38 N. E. 449, 26 L. R. A. 153, 42 Am. St. Rep. 743."

■ Was it morally wrong on the part of the Industrial Trust Syndicate to sell the property which it had contracted to sell to plaintiff and others to Ben L. Lewis, through the Italian Homestead, without making adequate provision for the protection of those with whom it had contracted to sell the property under the so-called "bond for deed"? If so, it was wrong for Lewis to accept the title and grant the mortgage, for he was a party to the transaction from beginning to end.

It is earnestly insisted that it is not the duty of one who agrees to sell property to see that the contract evidencing the agreement is properly recorded, and, in a general sense, that is true. However, where, as in this case, an owner of real estate receives most of the agreed purchase price of the property he contracted to sell, he is under

the moral duty not to alienate or incumber the property to the prejudice of the purchaser. In participating in a transaction of this character, the agent of the owner who had collected all the money paid by the purchaser and knew of his interest in the property is, in our opinion, guilty of a wrongful act, for which his surety is responsible within the meaning of the statute. There was no provision in the act of sale to Lewis which protected Victor in his rights under the contract; nor was he informed of the transaction. Lewis did not assume the obligations of the owners under the Victor contract in the act of sale or otherwise. He knew that Victor believed that title to the lots would be conferred upon him when the payments were completed, for he was receiving the payments, some of which were made after Lewis became the owner. Victor continued paying to Lewis and to a corporation which Lewis organized.

Concerning the interest which the contract of purchase stipulated should be charged against payments after a certain date and for which credit is asked in this suit, we are of opinion that it cannot be allowed, because this is not a suit on the contract for the sale of the lot, but one for damages for the wrongful act of an agent brought against his surety under an express statutory provision, an action ex delicto. The inquiry is the extent of damage suffered by plaintiff as a result of the action of the agent. Such loss as he suffered less any benefit he may have derived must be the criterion; in other words, his actual loss. He paid out $1,190 for the house and lot and lost it all, unless he has a right to remove the house, in which case the value of that right should be credited against his loss.

· Counsel for the defendant surety company, in their brief, with reference to the dwelling erected by Victor on the property, say "we have pointed out that this shack and the materials therein, as a matter of law, always remained the property of Victor; and hence he has not lost them, and he can by appropriate action in court recover this shack and move it off of the lot of ground. Therefore, this $250.00 cannot legally or properly ever be included in any wrongful judgment against this Company."

In Heeb v. Codifer & Bonnabel, supra, Codifer & Bonnabel had given the plaintiff, Heeb, a bond for deed as the owners of the property, and, when certain payments were in default, acting upon a provision of the contract, which was held to be of no effect, took possession of the property and sold it to a party by the

name of Mason. During the time that Heeb had possession of the property, he built a residence costing $2,196.02. The court held that Codifer & Bonnabel were responsible to plaintiff for the amount that he had expended upon the erection of the building, but remanded the case in order to permit defendant to show the amount of certain liens for building materials which they had paid which the court declared should be allowed as an offset. The following discussion in the opinion in that case is pertinent here:

"The plaintiffs caused the improvements to be made under the agreement of purchase, and this with full knowledge of and without the slightest objection from the defendant. The plaintiffs must therefore be held to have acted in good faith and with the intent of ultimately paying for and becoming the owner of the lots as improved by them.

"As the defendant has denied any claim or right of the plaintiffs to the improvements and denied the right of the plaintiffs to claim the value thereof, it must be held that the defendant has elected to take the improvements with the lots, and in this view it was not necessary for the plaintiffs to show that defendant had disposed of the property.

"The Code provides that where edifices have been made by a third person evicted but not sentenced to make restitution of the fruits, because such person possessed bona fide, the owner shall not have a right to demand the demolition of the works, * * * but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil. C. C. art. 508.

. "And where the owner, as in this case, takes possession of the improvements with the lots on which such works are erected and elects to claim such improvements, then such owner becomes liable to the person placing the improvements on the property for the value of the materials used in the building and the price of workmanship, without regard to the greater or less value which the property may have acquired by reason of the improvements. C. C. art. 508."

The situation here is similar to that which obtained in the Heeb Case with the exception that here no claim is made concerning the payment of liens for building material. There is practically no dispute as to the cost of the building, and it should be allowed as an item of damage.

As we have said, the plaintiff should recover his actual damages and, in estimating

those damages, we have included the sums of money paid to Lewis and to Lewis' successor, the Ben L. Lewis Corporation, the taxes that he paid, and the cost of the dwelling which he erected on the lots, because we believe all of these items to be properly included in the loss which the plaintiff sustained by the wrongful act of the defendant Lewis. On the other hand, plaintiff should not profit by the transaction and we are of opinion that there should be a credit allowed as an offset to these several items of damage equal to the amount of the value of the use of the land during the period in which plaintiff remained in undisturbed possession. There is no evidence in the record upon which we may base a conclusion as to the value of the occupancy. Consequently, we have determined to follow the procedure adopted in Heeb v. Codifer & Bonnabel, and remand the case to permit proof on this subject.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that this case be remanded to the civil district court for the parish of Orleans for further proceedings according to law and consistent with the views herein expressed.

Reversed and remanded.