187 So. 30

REIMANN et al. v. NEW ORLEANS
PUBLIC SERVICE, Inc.

No. 34946.

Feb. 6, 1939.

Daniel Wendling, of New Orleans, for appellants.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

ROGERS, Justice.

In the year 1925, the Fairmont Realty Company, Inc., the owner of a tract of land in the Gentilly section of New Orleans, subdivided its property into lots and designated the project as "Fairmont Park Subdivision." The Realty Company, desiring to furnish gas service to the purchasers of lots who might build houses in its subdivision, requested the defendant company, at its own expense, to extend its gas mains for that purpose. The defendant company rejected the request, but agreed to make the required extension upon payment to it by the Realty Company of the estimated cost of the work.

The agreement between the companies was embodied in two written contracts, one entered into on February 25, 1925, and the other entered into on November 12, 1925. Under the contract of February 1925, the defendant company undertook to extend its gas mains, a distance of 4,456 feet at $1.75 per foot, to serve residents of Fairmont Park, and under the contract of November 1925, the defendant company agreed to extend its gas mains, a distance of 1,801 feet at $1.25 per foot, to serve residents of Fairmont Park. In accordance with the terms of these contracts, the Realty Company deposited with the defendant company a total of $10,049.25 to defray the agreed cost of extending the gas mains. In each contract it was provided:

"It is hereby agreed that the deposit will be refunded to the depositor by the Company up to the amount of his total deposit, at the rate of $78.13 for each additional customer served from the extension itself, the company reserving the right to utilize the extension as a part of its dis-

tribution system. If the entire deposit is not refunded within a period of ten years from date, no further refund will be made on account of the deposit."

In the quoted contractual provision a refund was to be made only when and as the purchasers of lots from the Realty Company erected houses which became connected to the gas mains as extended by the defendant company. The defendant company completed the work to the satisfaction of the Realty Company. At the expiration of the ten-year period during which the deposit was to be refunded, forty-eight houses were constructed in the subdivision, and the Realty Company was refunded $3,750.25 therefor.

The liquidators of the Realty Company now seek to obtain an annulment of the contracts and the return of the entire amount of the deposit of $10,049.25, less $3,750.25 which was refunded under their provisions. In the alternative, plaintiffs seek an accounting from defendant showing the exact amount that might be due under the contracts, and, in the second alternative, seek an accounting from defendant of the cost of the construction of the gas mains. The amount of $3,750.25 representing an overpayment by defendant to the Realty Company of $390.65, defendant, by way of reconvention, prays for judgment for that amount.

The court below dismissed plaintiffs' suit and maintained defendant's reconventional demand. Plaintiffs are appealing from the judgment.

Plaintiffs contend that the contracts between the Fairmont Realty Company, Inc., and the New Orleans Public Service, Inc., were invalid on three grounds: First, that they were ultra vires as to both the contracting parties; second, that they lacked mutuality in that, under their terms, the Public Service Company was not obligated to do anything; and, third, that they contained a penal or forfeiture clause, which is reprobated by law. Plaintiffs' contentions are untenable.

Plaintiffs cannot avail themselves of the pleas of ultra vires and lack of mutuality to annul the contracts which were entered into in good faith by the contracting parties. The contracts have been fully executed by the Public Service Company, and the Realty Company has had the full benefit of the performance of the work. The executed contracts of corporations should be allowed to stand for and against both contracting parties when good faith so requires.

The provision of the contracts, under which the Public Service Company agreed to refund the Realty Company $78.13 for each customer served from the extensions of the gas mains for a period of ten years, is not a penal or forfeiture clause. A penal clause in a contract is a secondary obligation entered into for the purpose of enforcing the performance of a primary obligation. Civ.Code, art. 2117. A penalty or forfeiture clause embodied in a contract is to compensate the creditor for the damages he sustains by the non-execution of the principal obligation, and

not as a punishment for the violation of the contract, or for the failure to perform the obligation. Wagner Co. v. City of Monroe, 52 La.Ann. 2132, 28 So. 229; Heeb v. Codifer & Bonnabel, 162 La. 139, 110 So. 178.

◼ The clause in the contracts whereby the Public Service Company agreed to refund the Realty Company $78.13 for each new customer obtained for a period of ten years is not a secondary obligation. It is a primary obligation. The agreement, while more or less connected with and dependent upon the principal agreement, is, in itself, a separate and distinct agreement. If the contracts contained no provision whatever for refunds by the Public Service Company to the Realty Company, they would be entirely legal, for the reason that the Public Service Company undertook to do, and actually did, certain work in consideration of the payment therefor by the Realty Company. The provision of the contracts obligating the Public Service Company to refund the Realty Company $78.13 for each customer served from the extensions of the gas mains was not entered into for the purpose of enforcing the obligation of the Public Service Company to construct the gas mains, or to compensate the Realty Company for the damages it might sustain by the failure of the Public Service Company to do so. Under this particular agreement, the Realty Company was to receive and not to forfeit money. The purpose of the agreement was to benefit and not to penalize the Realty Company. Apparently the Public Service Company was willing to absorb the cost of extending its mains in the event a sufficient number of users were obtained to justify the expenditure, but it was not willing to defray the cost of the extensions of its gas mains to an outlying section of the city when no person could be served thereby and it could derive no benefit from doing the work.

◼ The officers of the Realty Company evidently were of the opinion that the extension of the gas mains would induce persons to buy lots and to build homes in its subdivision, and consequently, they were willing to incur the expense necessary to construct the mains. The term of ten years agreed upon by the contracting parties at the inception of the contract for the duration of the refunding agreement, was neither unlawful nor unreasonable. It is unfortunate that, because of unfavorable economic conditions, or because of other fortuitous events, the Realty Company was unable to dispose of its lots to home builders as rapidly as its officers and stockholders had hoped or contemplated. But this was one of the hazards of business assumed by the Realty Company and not by the Public Service Company at the time the contracts were entered into.

Plaintiffs cite Heeb v. Codifer & Bonnabel, 162 La. 139, 110 So. 178, and Boisseau v. Vallon & Jordano, 174 La. 492, 141 So. 38. There is nothing in the decisions in the cited cases that is contrary to the decision in this case.

In compliance with plaintiffs' demand for an accounting of the sums which might be due under the contracts, defendant an-

nexed to its answer statements showing the number of customers obtained and served from the newly constructed gas extensions during the stipulated period of ten years. These statements were admitted by plaintiffs to be correct. They show a payment by the defendant company to the Realty Company of $3,750.24, which was $390.65 more than the Realty Company was entitled to receive. The defendant company reconvened and recovered judgment for the amount of the overpayment. In these circumstances, the demand of plaintiffs must fail.

Plaintiffs' belated demand for an accounting for the cost of extending the gas mains has apparently been abandoned, since no argument was presented thereon either orally or in brief. In any event, the demand is without merit. The Realty Company and the Public Service Company entered into written agreements under which the Public Service Company undertook to do the work called for by the contracts in consideration of a certain stipulated amount to be paid by the Realty Company. The Realty Company paid the Public Service Company the stipulated amount and the Public Service Company did the work agreed upon to the full satisfaction of the Realty Company. Since both contracting parties fulfilled their obligations under the contracts, the defendant is not required to comply with plaintiffs' demand to show what it cost the defendant to do so.

For the reasons assigned, the judgment appealed from is affirmed.