DOMENGEAUX, Judge.
This is an action for specific performance of a contract and, in the alternative, for cancellation of the contract. The dispute is over who must pay for the extension of a water line onto plaintiffs’ property. The plaintiffs are all heirs of Arnold Ledoux and own a large tract of land in indivisión near Eunice, Louisiana.
Plaintiffs entered into a right-of-way agreement with the defendant, Central Louisiana Electric Company, Inc. (CLECO) by which CLECO was granted an exclusive right to provide water to plaintiffs’ property and by which CLECO obligated itself to provide such water service. In addition, CLECO was granted a 20-foot right-of-way: over plaintiffs’ property and agreed to build at its own expense an eight-inch water pipeline. The agreement specifically provided where this water line was to be built. Plaintiffs contend that the agreement further provided that additional water lines would be built by CLECO at its expense at plaintiffs’ request. Defendant CLECO contends that it agreed to furnish water to plaintiffs’ property under the “Standard Terms and Conditions” approved by the Louisiana Public Service Commission. CLECO contends that under the Standard Terms and Conditions, additional lines would be built at plaintiffs’ expense.
The district court found for the defendant. We affirm.
The contract in dispute resulted from negotiations between plaintiffs and CLECO, by which plaintiffs hoped to obtain water and electrical service on their land. On October 11, 1967, two agreements were signed. One dealt with electrical service and the other, with which we are here concerned, dealt with water service. The agreements were drawn up by Isom J. Guillory, Jr., Esq., who was then a notary and attorney and who is now a judge of the Twenty-Seventh Judicial District Court ¡n ancj £or St. Landry Parish, Louisiana.
The water line agreement which is in dispute contains a single main paragraph and eight general conditions. The parts pertinent to this dispute are the main paragraph 1 and general conditions 2 and 3. They provide as follows :
“1.
Grantors grant to Grantee a right of way Twenty (20') Feet wide for the purpose of placing, constructing, operating, repairing, maintaining and replacing thereon a pipeline for the transmission of water, which pipeline shall consist of pipe not less than 8" in diameter. Said 20 foot right-of-way shall commence at the intersection of the Northern boundary of Grantors’ property in Section 37, Township 7 South, Range 1 West of the Louisiana Meridian in Acadia Parish, Louisiana, and the Eastern right-of-way line of Louisiana Highway 755, and shall proceed South therefrom, gradually turning in a southwesterly direction along the Eastern and Southern boundary line of U. S. Highway 755 to a point on Grantors’ property where the pipeline of Transcontinental Gas Pipeline Company intersects Louisiana Highway 755. Said right of way is more specifically shown on the plat dated October 24, 1967, which said plat is attached hereto and made part hereof.
GENERAL CONDITIONS
2. Grantee shall have the exclusive right to furnish water to Grantors land in Acadia Parish, Louisiana, inherited by them in the Succession of Arnold Ledoux, No. 9879, Probate Docket, 27th Judicial District Court of Louisiana, in and for the Parish of St. Landry. This shall be a covenant *351 running with said land, and shall follow said land into any heirs, assigns or Vendees of Grantors. Any water furnished by the Grantee pursuant to this agreement and covenant shall be furnished under the standard terms and conditions and current rates then in effect with reference to the furnishing of water by Grantee to other water users in the immediate vicinity in this grant.
3. Grantee obligates itself to provide for and furnish the water needed by users owning and/or occupying the lands described in condition 2 above.
In accordance with paragraph 1, CLECO extended, at its cost, an eight-inch water line along Louisiana 755 on plaintiffs’ property. This line was constructed at a cost of $11,613.
The dispute concerns Conditions 2 and 3. In 1972 the plaintiffs began developing a small subdivision on a portion of their tract which is located some 9,600 feet (almost two miles) from the original water line built by CLECO. Relying on Condition 3 of their agreement, plaintiffs requested that CLECO provide water service to the subdivision at CLECO’S expense. CLECO agreed to provide the service, but contended that the line extension would have to be paid for by the plaintiffs. CLECO contends that it is obligated to provide water service under the “Standard Terms and Conditions” referred to in Condition 2 of the agreement, and that the Standard Terms and Conditions require plaintiffs to pay for any extension beyond 40 feet.
The “Standard Terms and Conditions” under which CLECO operates are approved by the Louisiana Public Service Commission. Paragraph 5 provides as follows :
“(5) DISTRIBUTION MAIN EXTENSIONS
Where an extension of the Company’s distribution main along a public street or highway is necessary to make service available to the Customer, the Company will bear the cost of such extension up to a length of 40 feet. The cost of any necessary additional main extension along a public street or highway or the entire cost of any extension on private property shall be advanced to the Company by the Customer. Such costs shall be determined by the Company 'and shall not be less than one dollar ($1.00) per foot of such additional main. This advance shall not bear interest but will be refunded to the customer at the rate of not less than $50 for each additional customer served directly from the extension within five (5) years from the date of installation. In no event, however, shall the amount refunded exceed the amount of the original advance.
The trial court found that the agreement was valid and that the Standard Terms and Conditions were made a part of the agreement by reference. Judgment was entered in favor of the defendant.
On appeal plaintiffs specify several errors. Plaintiffs’ primary contention is that the agreement was misconstrued by the trial court in that it provides that CLECO will provide water facilities on the land at its own expense. In the alternative, plaintiffs contend that if the agreement does not so provide it is invalid due to a failure of cause and consideration. With regard to its primary contention, plaintiffs seek specific performance. As to the latter contention, plaintiffs ask that the contract be cancelled.
SPECIFIC PERFORMANCE
Plaintiffs offer two objections to the construction of the contract made by the trial court. They contend that the reference to the Standard Terms and Conditions in Condition 2 applies only to “other water users” and not to plaintiffs. Plaintiffs further contend that even if they are bound by the reference to the Standard Terms and Conditions, the reference was *352 intended only as a guarantee that plaintiffs could not be charged an exorbitant rate for the water and was not a reference to the Standard Terms and Conditions in general.
The first contention is based on the last sentence of Condition 2:
“Any water furnished by the Grantee pursuant to this agreement and covenant shall be furnished under the standard terms and conditions and current rates then in effect with reference to the furnishing of water by Grantee to other water users in the immediate vicinity in this grant.” (Emphasis supplied.)
Plaintiffs would read the sentence such that the Standard Terms and Conditions apply only to “other water users in the immediate vicinity” and not to plaintiffs.
We are not impressed with this argument. We are convinced, as was the trial judge, that a reading of the sentence in its entirety shows that any water furnished by CLECO would be furnished under the same Standard Terms and Conditions which apply to other water users in the vicinity. It appears that the provision was inserted in the agreement to prevent CLECO from discriminating against the plaintiffs by furnishing water at a higher rate or under different conditions than the furnishing of water to other users in the area. Although plaintiffs argue that the sentence in effect is a “stipulation pour au-tri” in favor of “other water users”, they advance no arguments as to why such a stipulation would be made between themselves and CLECO. We think the reference to “other water users” was made solely to prevent any discrimination against plaintiffs. This is a logical reading of the sentence and the most reasonable explanation for its insertion.
Plaintiffs next contend that although the conditions refer to the “Standard Terms and Conditions and current rates”, the only reason for the reference was to guarantee fixed rates. However, if this were the case, there would be no need for reference to the Standard Terms and Conditions. The reference to “current rates” would have been enough. It is an established principle that a contract clause is presumed to be meaningful and that it should be so construed. Civil Code art. 1951. To construe the agreement as tl'u. plaintiffs contend would render the reference to the Standard Terms and Conditions meaningless.
Plaintiffs contend that the testimony of (now Judge) Isom J. Guillory, Jr., who prepared the instrument, conclusively shows that the reference was intended to refer only to rates and not the whole of the Standard Terms and Conditions. However, unless the contract is fraudulently procured or is ambiguous, parol evidence is not admissible with regard to a written contract. Civil Code Art. 2276.
We do not think that the contract is ambiguous. Plaintiffs in fact primarily argue that it is unambiguous. Since we find the contract to be unambiguous, we will not consider the testimony of Judge Guillory with regard to the interpretation of the contract.
In summary then, we find that under the contract CLECO has an exclusive right to furnish water to plaintiffs’ land; CLECO is further obligated to furnish water to plaintiffs’ land under the Standard Terms and Conditions and at current rates. The contract does not specifically provide that CLECO must extend its lines at its own expense.
We note that plaintiffs contend that even under the Standard Terms and Conditions CLECO must furnish water facilities on plaintiffs’ land at its own expense. Plaintiffs contend that Section 7 rather than Section 5 (quoted supra) applies to the extension it requests. Section 7 of the Standard Terms and Conditions provides:
“(7) SERVICE LINE
The Company shall install, own and maintain a suitable service line from a *353 convenient point of connection with Company’s distribution main to the location of Company’s metering equipment. The Company shall bear the cost of such service line up to Customer’s property line and Customer shall bear the cost of all additional lines.”
The trial court held that the line contemplated by plaintiffs was a “Distribution Main Extension” governed by Section S rather than a “Service Line” governed by Section 7.
We express no opinion in this matter as we are without jurisdiction to do so. Article 6, Section 4, of the Louisiana Constitution of 1921 grants primary jurisdiction in matters concerning and growing out of the service to be rendered by public utilities to the Louisiana Public Service Commission. This primary jurisdiction is exclusive and until a party has exhausted his available remedies before the commission, he cannot resort to the courts. Shreveport Laundries, Inc. v. Southern Cities Distributing Co., 176 La. 994, 147 So. 56 (1933). Thus, we make no finding with regard to plaintiffs’ rights under the Standard Terms and Conditions. We hold only that under plaintiffs’ right-of-way agreement with CLECO they are bound by the Standard Terms and Conditions as referred to in that agreement.
VALIDITY
We now turn to plaintiffs’ alternative contention that the contract should be can-celled if this court holds (as we do) that under the right-of-way agreement CLECO is not obligated to construct the water line on the entire estate.
In this regard, appellants first allege the invalidity of the contract due to lack of consideration. It is the contention of the plaintiffs that under our interpretation of the agreement they received nothing in return for their giving CLECO a free right-of-way, in addition to the exclusive right to furnish water on the lands owned by the plaintiffs.
The trial judge found no merit to this argument in light of the fact that CLECO constructed along plaintiffs’ property some 3,290 feet of 8 inch water line (as provided in the contract) at their own expense. We agree fully with the conclusion reached by the district judge to the effect that sufficient consideration has been shown.
Plaintiffs, however, allege further that such a finding is in error because CLECO did not in fact obligate itself under the agreement to build the 3,290 feet water line along Louisiana Highway 755.
The basis of this argument is Section 7 of the General Conditions set forth in the right-of-way agreement:
“Provided further that even in the event that this grant fails . . . Grantee shall still have the right and obligations set forth in General Conditions 2 and 3.”
Plaintiffs in effect argue that the language of Condition 7 indicates lack of mutuality between the parties, or presence of a potestative condition.
Even assuming arguendo that CLECO did not obligate itself, plaintiffs, however, have no cause for complaint since CLECO did in fact construct the water line referred to in Paragraph One of the right-of-way agreement. A party seeking to take advantage of the lack of mutuality or of a potestative condition in a contract must do so seasonably and not delay until the other party has executed the contract. Once the contract has been performed a valid and enforceable obligation comes into effect. Pennington v. Drews, 209 La. 1, 24 So.2d 156 (1945); Reimann v. New Orleans Public Service, 191 La. 1079, 187 So. 30 (1939); Fiesta Foods, Inc. v. Ogden, 159 So.2d 577 (La.App. 1st Cir. 1963); Dockson Gas Co. v. S & W Construction Co., 12 So.2d 847 (La.App. 2nd Cir. 1943); Oliver v. Home Service Ice Co., 161 So. 766 (La.App. 2nd Cir. 1935).
*354 Appellants’ final argument in this regard is that the agreement is invalid due to error of motive or principal cause. This contention is governed by Civil Code articles 1824 through 1833. Articles 1824 through 1827 are pertinent to the issue presented and provide as follows:
“Art. 1824. The reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falsely represented, there can be no’ valid consent.
Art. 1825. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made.
Art. 1826. No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it.
Art. 1827. But wherever the motive is apparent, although not made an express condition, if the error bears on that motive, the contract is void. A promise to give a certain sum to bear the expenses of a marriage, which the party supposes to have taken place, is not obligatory, if there be no marriage.”
Plaintiffs contend that they were under the impression when they signed the agreement that building the water lines was the responsibility of the defendant CLECO. They further contend that this belief was a principal cause for their entry into the contract and that this error of cause vitiates their consent to the agreement.
Under our Code there is error which vitiates consent to the contract only if the error was with regard to the principal cause or motive and only if the other party is apprised of or presumed to have known the principal motive. Civil Code arts. 1824-1827.
The transaction before us involves the grant of a right-of-way, the grant of an exclusive right to furnish water, and the undertaking of an obligation to supply water. There is nothing in the nature of the transaction (article 1826) which indicates that plaintiffs’ primary motive in entering the contract was the procuring of water lines on the entire estate at CLE-CO’s expense. It is apparent that CLECO was to build a line at its own expense according to the provisions of paragraph one. There is no doubt that CLECO can be presumed to have known that this was a motive or cause of plaintiffs’ entering the agreement. This motive is apparent. However, we do not find that plaintiffs’ further motive to have CLECO obligated to provide water facilities on the entire tract at its own expense is apparent from the nature of the transaction. If this was plaintiffs’ principal cause, it is not implicit in the nature of the agreement as is the example given in Article 1827.
Thus, even assuming that plaintiffs’ principal cause in entering the agreement was that CLECO was to. furnish water facilities on the whole tract at its expense, we find no basis upon which to presume that CLECO had knowledge of this primary cause. Furthermore, there is nothing in the record which indicates that CLECO was actually apprised that this was the principal cause.
There is testimony that this motive was known to Judge Guillory who prepared the agreement. However, there is no evidence that CLECO was apprised of this fact. In the situation before us plaintiffs have the burden of proving that CLECO had knowledge of this principal cause. Having failed to show this knowledge, there is no proof of error as to the principal cause of the contract and it cannot be cancelled for this reason. Tri-Parish Bank and Trust Co. v. Richard, 280 So.2d 850 (La.App. 3rd *355 Cir. 1973), writ refused 283 So.2d 499 (La.1973).
For the above and foregoing reasons we conclude that the judgment of the trial court is correct. It is therefore affirmed. Costs of this appeal are taxed to appellants.
Affirmed.
FRUGÉ, J., respectfully dissents and assigns reasons.