606 So.2d 577 (1992)
Richard A. PHILIPPI, Jr.
v.
Felice L. VIGUERIE and Daniel A. Viguerie.
No. 92-CA-270.
Court of Appeal of Louisiana, Fifth Circuit.
September 29, 1992.
Writ Denied December 11, 1992.
*578 Joseph H. Hurndon, Michael G. Gaffney, Hurndon and Gaffney, New Orleans, for plaintiff/appellant.
Richard T. Regan, Metairie, for defendants/appellees.
Before GRISBAUM, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
In this appeal we are called upon to decide whether the trial court erred in reducing liquidated damages due by stipulation of the parties. Because we find the trial court's decision was not manifestly erroneous, we affirm.
In 1976 Felice and Daniel Viguerie formed Top Hatch Incorporated, an "aftermarket" business for the customization of automobiles for new car dealerships in the Southeast Louisiana and Southwest Mississippi areas. Top Hatch, Inc. installed certain ground effects such as sun roofs, luggage racks, window tinting, vinyl tops and roofs, rear window defoggers and other cosmetic treatments on new cars. Daniel Viguerie, as the sole sales representative of Top Hatch, Inc., personally contacted about fifty new car dealerships in the market area on a regular basis. Due to Mr. Viguerie's efforts, Top Hatch, Inc. grew in volume and enjoyed a reputation as a professional and competent firm.
On November 25, 1987 the Vigueries sold to Richard Philippi, 500 of the 1000 shares of Top Hatch, Inc. for $65,000.00. For about two months the business was operated as a partnership with Daniel Viguerie continuing as the outside salesman for the firm and Richard Philippi running the business and production end of the operations.
On January 29, 1988 Philippi purchased all of the remaining shares of stock in Top Hatch for an additional $76,000.00. The corporation owned few tangible assets and it appears from the record before us that the $141,000.00 purchase price was paid primarily for the single most valuable corporate asset, the goodwill it established through its solid reputation. To insure that the goodwill was transferred to Philippi in the sale, the parties entered into a non-competition agreement. According to the terms of the agreement Viguerie was not to engage in any competitive business in a twelve parish area in Louisiana and a two county area in Mississippi. Conversely, Philippi agreed not to expand his business to the Hattiesburg, Mississippi and Alexandria, Louisiana trade areas where Viguerie intended to conduct business operations. *579 The agreement stipulated that any violation would result in the imposition of a penalty of liquidated damages in the amount of $1,000.00 per violation.
On October 27, 1989 Philippi filed a petition for injunctive relief, for damages and/or recision of sale in which he asserted that Viguerie violated the covenant not to compete by engaging in a business relationship with customers of Top Hatch. After a trial on the merits, the trial court found the non-competition agreement valid but non-inclusive of new products introduced into the aftermarket business after the signing of the agreement. Further, the trial court found that Viguerie had violated the agreement on 137 specific occasions. However, the court found the $1,000.00 per violation provision to be penal in nature and instead awarded Philippi $200.00 per violation for a total of $27,400.00.
Philippi appeals the judgment of the trial court only as it relates to the measure of damages. Viguerie did not appeal any portion of the judgment.
LSA-C.C. art. 2005 provides that:
Parties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation.
That stipulation gives rise to a secondary obligation for the purpose of enforcing the principal one.
Art. 2005 reproduces the substance of former art. 2117. As explained in the comments following art. 2005, the new article effects a change in terminology but does not change the law. The term "stipulated damages" was substituted for the term, "penal clause" because it is a more neutral term.
Although expressed in terms of "penal clause" in accordance with former art. 2117, the law is well settled that such a clause is designed to both fix the damages caused by nonperformance of the principal obligation and act as a constraint to encourage performance of that obligation. However, in no way may the penal clause serve as a vehicle to recover punitive, as opposed to compensatory damages. Heeb v. Codifer & Bonnabel, Inc., 162 La. 139, 110 So. 178 (1926); Thompson v. Bullock, 236 So.2d 892 (La.App. 3rd Cir.1970); Rainey v. McCrocklin, 185 So. 705 (La.App. Orl.1939); Chauvin v. Theriot, 180 So. 847 (La.App. 1st Cir.1938); 42 La.L.Rev. 1315 at 1416; Mason v. Coen, 449 So.2d 1195, 1199 (La.App. 2nd Cir.1984). It is also well settled that where the parties have the capacity to, and in fact do, stipulate for liquidated damages, courts will not inquire whether the actual damages equaled or exceeded the agreed amount. Lama v. Manale, 218 La. 511, 50 So.2d 15 (1950); Hemenway Company, Inc. v. Bartex, Inc. of Texas, 373 So.2d 1356 (La.App. 1st Cir. 1979); Ball Marketing, Inc. v. Sooner Refining, Co., 422 So.2d 582, 585 (La.App. 3rd Cir.1983); writ den. 427 So.2d 1213 (La. 1983). In keeping with that line of jurisprudence, LSA-C.C. art. 2009 was enacted in 1984 to relieve the party seeking to invoke a stipulated damage clause in a contract of the need to prove actual damages.
However, art. 2012 grants the court power to modify stipulated damages if those damages are so manifestly unreasonable as to be contrary to public policy. As correctly stated by appellant, the court's sole inquiry in this matter is whether the stipulated damages of $1,000.00 per violation of the non-competitive agreement is so manifestly unreasonable as to be contrary to public policy.
The trial court's factual findings, which we find to be consistent with the testimony given at trial, are that Viguerie on occasions sold to Top Hatch customers the exact same products sold by Top Hatch and is in violation of the non-competition agreement. The court further found the dealerships which provided Top Hatch with its customer base knew of the sale of Top Hatch to Philippi but continued to do business with the company. In fact Top Hatch had increased its business during this period.
Nonetheless, Philippi paid for Top Hatch's reputation and goodwill and, as previously stated, the stipulated damage clause was included as a protection of that investment. We believe both parties understood *580 the purpose and terms of the clause. Indeed, Viguerie has made no claim that he misunderstood the contract.
From the record before us it appears that these two parties are sophisticated businessmen with equal bargaining power. They did not have an employer-employee relationship, but rather were independents who for a time were equal partners.
The trial court, after considering all of the evidence, found that the stipulated damages were unreasonable and, although not specifically expressed, contrary to public policy based on the fact that to enforce the $1,000.00 per violation would "effectively return to plaintiff the entire amount of the purchase." It should also be noted that the total gross sales of the 137 violations totaled $54,572.16, yet the liquidated damages at $1,000.00 per violation would be $137,000.00. On the record before us we do not believe the trial court's judgment to modify the stipulated damages is manifestly erroneous. Consequently, we affirm.
AFFIRMED.