## PURPERA v. FIDELITY & DEPOSIT CO. OF MARYLAND et al.

No. 17184.

Court of Appeal of Louisiana. Orleans.

June 12, 1939.

De Lesseps S. Morrison of New Orleans, and J. Thomas Jewell, of New Roads, for appellant.

P. M. Milner, of New Orleans, for appellees Fidelity & Deposit Co. of Maryland and American Bonding Co.

McCALEB, Judge.

Plaintiff, John Purpera, a resident of Pointe Coupee Parish, brought this suit against the defendants, Joseph W. Sheldon, Fidelity and Deposit Company of Maryland and American Bonding Company of Baltimore, to recover the sum of $1200.00 which he allegedly paid to the defendant Sheldon in conformity with an agreement to purchase real estate. Liability against the defendant bonding companies is sought to be enforced under certain statutory bonds executed by them in accordance with the provisions of Section 16 of Act No. 236 of 1920 whereby they agreed to indemnify the public for any wrongful conduct on the part of Sheldon in the operation of his business as a real estate broker.

The allegations of plaintiff's petition are, in substance, as follows: That, on February 16, 1924, he entered into a written contract with Sheldon termed a "bond for deed" whereby the latter agreed to sell to him two certain parcels of land located on North Galvez and Clouet Streets in the City of New Orleans for a stipulated price, payable in monthly instalments of $10 beginning on March 16, 1924, and extending for a period of 6.375 years or until August 1, 1930; that he has fully complied with the terms and conditions of the contract and has paid to Sheldon all

sums due thereunder inclusive of principal, interest and taxes amounting to a total sum of $1200 and that, notwithstanding this, the said Sheldon has failed and refused to carry out his obligations under the agreement in that he has been unable to transfer to him (plaintiff) a · good and valid title to the property. It is further alleged that, at the time Sheldon entered into the contract, he was engaged in the real estate business in the City of New Orleans and was licensed as a real estate agent and broker under the provisions of Act No. 236 of 1920; that in conformity with Section 16 of that statute, Sheldon had furnished certain bonds in favor of the Governor of the State of Louisiana for the benefit of any person in interest (as their interest might appear) conditioned that he should well and truly carry out the objects and purposes of his real estate brokerage business and should pay all damages which might result from his default in case he failed to act as an honest real estate agent; that, òn January 1, 1920, the defendant Fidelity and Deposit Company of Maryland executed its bond No. 1,832,840 in the sum of $10,000 whereby it agreed to become responsible for any failure on the part of Sheldon to conduct his real estate brokerage business properly; that this bond was renewed by said Fidelity and Deposit Company during the years 1921, 1922, 1923, 1924, 1925, 1926, 1927 and 1928 by the execution of continuing certificates · for each of those years; that, on December 21, 1928, another bond in the sum of $10,000 was executed by said Sheldon with the Fidelity and Deposit Company as surety conditioned for the faithful performance by Sheldon of his real estate brokerage business during the year 1929 and that on December 13, 1929, the said Sheldon executed still another bond in the sum of $10,000 with the defendant American Bonding Company of Baltimore as surety thereon conditioned for the faithful performance by Sheldon of his real estate brokerage business during the year 1930.

Plaintiff further alleges that, in spite of the fact that he has complied with all of the obligations imposed upon him under his agreement to purchase the real estate from Sheldon, the latter on July 7, 1927, mortgaged the property to the Pyramid Homestead Association as security for a loan to him in the sum of $45,000; that petitioner was unaware of the execution of the mortgage and did not learn of its existence until the year 1935 and that, due to that encumbrance, Sheldon placed himself in a position whereby he was unable to transfer a good title to the real estate. It is further alleged that, at the time of the execution of the mortgage by Sheldon, he was financially able to liquidate the same because his real estate business was expanding and was being successfully conducted, but that, in the years 1928 and 1929 as a result of the collapse of real estate values in the City of New Orleans, Sheldon became insolvent; that, since that time, he was not, nor is he now, in a position to pay off the mortgage and comply with 'the terms and conditions of the "bond for deed" under which he covenanted to transfer a valid and merchantable title to the property involved.

Plaintiff further says, in the alternative, that he is unable to fix with certainty the date upon which Sheldon became insolvent and for that reason the following allegations are made upon information and belief. Accordingly, he charges that on and after March 1928 or, alternatively, from and after March 1929, Sheldon continued to fraudulently accept instalment payments from him with full knowledge of the fact that he could not on any date thereafter transfer a valid title to the property involved; that, at the time Sheldon accepted the payments, he knew that he was unable to liquidate the large encumbrance upon said property and that his act in receiving petitioner's money under such circumstances was wrongful and was of a continuing and self-perpetuating character which extended through the years 1928, 1929 and 1930.

Plaintiff further avers that, in the proceedings No. 216,757 of the docket of the Civil District Court entitled Fidelity and Deposit Company of Maryland v. J. W. Sheldon et al., the defendant, Fidelity and Deposit Company, instituted an interpleader suit under the provisions of Act No. 123 of 1922 and deposited in the registry of the Civil District Court the sum of $10,000 which it declared was the extent of its liability on its bond No. 1,-832,840 which it had executed as surety for Sheldon; that certain creditors of Sheldon· were impleaded in those proceedings and were therein called upon to assert such claims as they might have against the said Sheldon; that plaintiff was neither made a party to the interpleader suit nor did he have any notice of the same and that, accordingly, he is not

bound by the judgment of the Civil District Court in that case by which the Fidelity and Deposit Company was discharged from any and all liability on the bond No. 1,832,840 which it executed for the benefit of the creditors of Sheldon.

Plaintiff also contends that the responsibility of the defendant, Fidelity and Deposit Company, as surety for Sheldon cannot in any event be adjudged to be limited to the sum of $10,000 but that, on the contrary, it is liable to the creditors of Sheldon to the extent of $10,000 for each and every year during which the bond was continued in effect. He furthermore charges that, even though it should be found that the judgment of the Civil District Court in the interpleader proceedings is valid and binding upon him, the judgment cannot be interpreted to mean that the Fidelity and Deposit Company is not responsible as Sheldon's bondsman for the year 1929 forasmuch as the bond given by it for that year is separate and distinct from the bond which was considered in the interpleader suit.

Again, in the alternative, plaintiff alleges that, since Sheldon has abrogated the agreement and since the facts concerning the time and extent of his losses are peculiarly within Sheldon's knowledge, he is unable to ascertain with exactness the extent of his losses prior to the year 1930 (during which time the Fidelity and Deposit Company was surety on Sheldon's bond); that he therefore estimates that his losses for that period amount to $800 and that his losses for the year 1930 (when the American Bonding Company was surety on Sheldon's bond) amount to $400.

The petition concludes with a prayer for judgment against Sheldon for the sum of $1200 with interest and that Sheldon be held liable in solido with the co-defendants, Fidelity and Deposit Company of Maryland and American Bonding Company of Baltimore, for such amounts as may be adjudged and decreed to be owing by them or either of them. He further prays for judgment against the Fidelity and Deposit Company for the sum of $800 or such other amount as the court may adjudge represents the amount of the loss sustained by him during the years when that defendant was surety for Sheldon and that there be further judgment in his favor against the American Bonding Company for the sum of $400 or for such sum as the court may conclude represents the amount of the loss sustained by him during the year 1930 when that defendant was surety on the bond of Sheldon. And, in the alternative, plaintiff prays that the liability of the defendants, Fidelity and Deposit Company and American Bonding Company, be adjudged to be solidary and cumulative and that both of these defendants be held liable in solido with each other and with the defendant Sheldon for the full amount sued for ($1200) with interest.

In due course, the defendants appeared and resisted plaintiff's demand. Sheldon, after filing certain exceptions which were overruled, joined issue with the plaintiff by way of answer.

The Fidelity and Deposit Company filed the following exceptions to plaintiff's petition: (1) Misjoinder of parties defendant; (2) no cause of action; (3) no right of action and (4) that plaintiff was judicially estopped from making any claim upon the bond executed by it as statutory surety for Sheldon for the reason that it had previously been discharged of any and all liability on its bond in the proceedings No. 216,757 of the Civil District Court entitled Fidelity and Deposit Company of Maryland v. J. W. Sheldon et al.

The American Bonding Company also excepted to plaintiff's petition on the following grounds: (1) That the court was without jurisdiction ratione materiae and (2) that there is a misjoinder of parties defendant.

After hearing argument on the foregoing exceptions, the district judge maintained all of them and dismissed plaintiff's suit as to the defendant bonding companies. Plaintiff has prosecuted this appeal from the adverse decision.

Preliminarily, we direct our attention to the exception to the jurisdiction of the Civil District Court filed by the American Bonding Company. That exception is founded upon the following premise: That plaintiff alleged in his petition a strict compliance with the terms and conditions of his agreement with Sheldon; that, according to the contract, plaintiff was required to pay monthly instalments of $10 from March 16, 1924, up to and inclusive of August 1, 1930; that the bond executed by the American Bonding Company only protected plaintiff against the wrongful acts of Sheldon occurring in the year 1930 and that, since

Sheldon did not receive more than $70 from plaintiff during that year, its liability on the bond is limited to that amount, the recovery of which is below the requisite jurisdiction of the Civil District Court.

Counsel for plaintiff, in answer to this proposition, states that the amount received by Sheldon from plaintiff during the year 1930 should not be considered as the sum for which the American Bonding Company is liable. He asserts that plaintiff's action is based on the theory that Sheldon wrongfully received or misappropriated all of the money paid under the contract and that plaintiff does not know and cannot allege the specific year or years in which the misappropriation occurred, as these matters are exclusively within the knowledge of Sheldon. Hence, counsel maintains that the evidence may reveal that Sheldon committed all of the wrongful acts charged against him during the year 1930 and, in such case, the American Bonding Company would be liable for the full amount of plaintiff's claim, notwithstanding the fact that Sheldon only received $70 from plaintiff in 1930.

We find, however, that the argument advanced by plaintiff's counsel is unsound because it overlooks certain specific allegations of fact contained in plaintiff's petition. Plaintiff has charged in Article VII of his petition that Sheldon could not give him a valid title to the property for the reason that, on July 7, 1927, he executed a mortgage for $45,000 on this property in favor of the Pyramid Homestead Association. In the following Article (No. VIII), plaintiff proceeds to contradict the allegations of Article VII by setting forth that, at the time Sheldon executed the mortgage, he was well able to liquidate it (as his business was then expanding and was being successfully conducted) but that, in the years 1928 and 1929, due to the collapse of his real estate business, he became financially embarrassed and that, since those years, he has never been in a position to pay off the huge encumbrance placed upon the property by him. Following this allegation, plaintiff asserts that Sheldon acted wrongfully in accepting any payments under the contract after he had become financially involved and during any time when he knew or should have known that he was unable to liquidate his indebtedness to the Pyramid Homestead Association. These charges, we think, plainly exhibit that the plaintiff's cause of action is grounded upon the wrongful conduct on the part of Sheldon in accepting instalment payments under the contract after he was aware that he could not, because of the existence of the mortgage, transfer to the plaintiff a clear title to the real estate. The American Bonding Company executed a bond whereby it agreed to protect plaintiff and the public generally against the wrongful acts of Sheldon while he was conducting his business as a real estate broker during the year 1930. The money coming into Sheldon's hands during that year, by virtue of his contract with the plaintiff, amounted to a total of $70. The obligation of the American Bonding Company did not protect the plaintiff against Sheldon's past conduct or for any wrongful acts committed by him prior to the year 1930. The plaintiff has specifically charged that Sheldon's bad faith began in 1928 or 1929. It is true that, in other articles of his petition, plaintiff states that he does not know when Sheldon began to take his money unlawfully but those allegations of ignorance on his part are unavailing in view of the other definite charges made by him to which we have just alluded. It follows that, since Sheldon wrongfully received only the sum of $70 during the year 1930, the liability of the American Bonding Company in the case is limited to that amount. The Civil District Court is without jurisdiction of disputes involving less than $100 and hence the plea of the American Bonding Company was properly maintained.

We next consider the exception of no cause of action filed by the Fidelity and Deposit Company. That defendant's contention is that its statutory bond protects the public against Sheldon's wrongful dealings as a real estate broker; that, nowhere in the petition is it alleged that Sheldon was ever acting as an agent for anyone in the execution of the contract with plaintiff and that, accordingly, there is no liability on the bond.

The point is well taken. Plaintiff alleges that he entered into a written contract with Sheldon whereby the latter contracted and agreed to sell to him certain described real estate and he annexed to his petition the original agreement which shows that Sheldon apparently was acting for himself as the seller of the property. Plaintiff is seeking to hold the bonding

company responsible to him by virtue of a bond executed by it in conformity with Section 16 of Act No. 236 of 1920. Section 2 of that statute defines a real estate broker to be:

"* * * any person, * * * who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiate the purchase or sale or exchange of real estate, or who leases or offers to lease or rents or offers for rent, *any real estate or the improvements thereon for others,* as a whole or partial vocation. * * * The provisions of this act shall not apply to any person, * * who, as owner or lessor, shall * * * perform any of the acts aforesaid with reference to property owned by them. * * *" (Italics ours.)

The bond given by the defendant bonding company protects the public only in cases where Sheldon was acting in his capacity as a real estate broker or agent. Nowhere in plaintiff's petition is there any allegation that Sheldon was acting in a fiduciary capacity when he entered into the contract with the plaintiff for the sale of the real estate and his charges, respecting the fact that Sheldon was engaged in the real estate business, are not sufficient to warrant the conclusion that the latter was not the owner of the land. On the contrary, it is alleged that Sheldon mortgaged the land to the Pyramid Homestead Association to plaintiff's prejudice. This averment clearly indicates that he was the owner of the property forasmuch as he could not have encumbered it otherwise. In truth, the sum and substance of plaintiff's charges is that Sheldon agreed to sell to him certain property under bond for deed; that he breached the agreement and that, at the time of the contract and thereafter, Sheldon was operating a real estate business in the City of New Orleans and had given a bond in accordance with the provisions of Act 236 of 1920. Certainly no liability would result from such a state of facts insofar as the bonding company is concerned if it be true that Sheldon was the owner of the real estate and agreed to sell it for his own account.

Counsel for plaintiff nevertheless argues that, because plaintiff has stated that Sheldon has committed the acts complained of in furtherance of his real estate business, it follows that he must have been acting as an agent or broker at the time he made the agreement. In support of this proposition, he relies upon our decisions in Victor v. Lewis et al., 157 So. 293, and Murrin v. Sheldon et al., 165 So. 26.

An examination of the facts of the cases depended upon amply demonstrates that they are not apposite to the situation here. In the Lewis case, it appeared that a concern known as Industrial Trust Syndicate appointed Lewis, a realtor, as its sales agent for the purpose of selling 76 lots belonging to it in the City of New Orleans. Later, the syndicate transferred title to the tract of land to Lewis in furtherance of a plan to sell the property in lots. Lewis sold to Victor certain lots in the tract under a bond for deed and subsequently defaulted on his contract. In the suit by Victor against Lewis and his surety, the bonding company contended that, since the plaintiff dealt with Lewis as owner of the property and not as a real estate agent, it was not responsible. We refused to entertain the defense on the ground that it clearly appeared from the evidence in the case that the title to the tract of land was placed in the name of Lewis by the real owner, Industrial Trust Syndicate, in furtherance of a plan or scheme for the marketing of the real estate and that, in truth, Lewis was acting as agent for an undisclosed principal. There, plaintiff proved it to be a fact, after a trial of the case on its merits, that Lewis was acting in a fiduciary capacity. In the petition now under consideration, there is no allegation that the title to the land was transferred to Sheldon by the true owner for purposes of convenience.

The case of Murrin v. Sheldon et al., supra, is likewise distinguishable from the instant matter. There, it appeared that Sheldon executed a bond for deed to plaintiff wherein he styled himself as "seller" of the real estate when, in truth, the property was owned by a partnership composed of himself and a man named Garrett. The bonding company, which had been made party defendant in the suit, resisted liability on the ground that Sheldon was acting in his individual capacity and not as a real estate broker. In answer to this proposition, we observed [165 So. 28]:

"* * * Sheldon was dealing with property which did not belong to him, and therefore he was obviously acting for another; the 'other' being the partnership composed of himself and Garrett, which partnership is a separate legal entity from the members who compose it."

The petition before us, as we have already pointed out, does not allege that Sheldon was acting for anyone other than himself in his dealings with the plaintiff. Counsel for plaintiff, however, by supplemental brief states that the truth is that Sheldon was not the owner of the property and that, in the mortgage executed in favor of the Pyramid Homestead Association, it appears that the land stands in the name of a concern known as Industrial Syndicate, Inc. We are unable to accept counsel's statement as an allegation of fact. The mortgage referred to by him has not been annexed to the petition and we have no way of ascertaining from plaintiff's allegations that anyone other than Sheldon is the lawful owner of the property or that he was acting as an agent for an undisclosed principal. We therefore concur in the ruling of the trial judge in maintaining the exception of no cause of action. We think, however, that plaintiff should be given an opportunity to supplement his allegations by stating, if he can, that Sheldon was acting in his capacity as real estate agent for the owner of the property. It is now well settled that it is proper (as being consonant with considerations of equity and the modern trend of liberality in upholding substantial rights instead of subtle technicalities) to permit a petition, which does not state a cause of action, to be amended. See Reeves v. Globe Indemnity Co., 185 La. 42, 168 So. 488, and Dumaine v. Gay, Sullivan & Co., La.App., 171 So. 396. The case will accordingly be remanded for that purpose.

Since we find that the trial judge was correct in dismissing the American Bonding Company from the proceeding on its exception to the jurisdiction of the court ratione materiae, it is unnecessary for us to consider the exceptions of misjoinder of parties defendant filed by the bonding companies.

In view of our finding that plaintiff does not state a cause of action, it is not imperative for us to discuss at this time the merits of the exceptions of no right of action and judicial estoppel interposed by the Fidelity and Deposit Company. If the plaintiff is in a position to amend his petition so as to state a cause of action, then the question as to whether he is bound by the concursus proceedings taken by the Fidelity and Deposit Company will be pertinent but, in the event

he is unable to do so, he would obviously be without interest to attack the validity of the judgment of the Civil District Court exonerating the insurance company from further liability as surety on Sheldon's bond.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and that this matter be and it is remanded to the Civil District Court for the Parish of Orleans for further proceedings not inconsistent with the views herein expressed and according to law; costs of this appeal to be borne by the appellant; all other costs to await the final outcome of the matter.

Reversed and remanded.