280 So.2d 850 (1973)
TRI-PARISH BANK & TRUST COMPANY, Plaintiff and Appellee,
v.
Leopold RICHARD, Jr., et al., Defendants and Appellants.
No. 4235.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1973.
Rehearing Denied August 15, 1973.
Writ Refused October 12, 1973.
Charles N. Wooten, Lafayette, for defendants-appellants.
Clanton & Johnson by John W. Johnson, Eunice, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit on a promissory note for the sum of $45,000. The plaintiff bank is the holder and owner of the note. The defendants, Dr. Leopold Richard, Jr. and John W. Carruth, are makers. Judgment by default was entered against Carruth and he has not appealed. After a trial on the merits, judgment was also rendered against Richard, and he appealed.
The issues concern the following three defenses urged by Richard: (1) The note was signed by Richard through error of fact caused by misrepresentations of an officer *851 of the plaintiff bank. (2) Defendant received no consideration for the note. (3) Defendant was induced to sign the note by threats of an officer of the plaintiff bank.
THE GENERAL FACTS
The facts are that for many years Richard Motor Company, an Oldsmobile dealer in Eunice, had a checking account with the plaintiff, Tri-Parish Bank & Trust Company in Eunice. The business was owned 50% by defendant, John W. Carruth, and 50% by Leopold Richard, Sr., father of the defendant, Dr. Richard. On the death of their mother, defendant and his sister, Mrs. Carruth, inherited an interest in the dealership. Defendant's brother-in-law, John W. Carruth, became the manager, but Mr. Richard, Sr. continued to be active in the business and to receive his livelihood from it.
During the early part of 1969, Dr. Leopold Richard, Jr. and John W. Carruth formed a corporation in Lafayette under the name, "Royale Rental and Leasing Corporation". Each owned 50% of the stock but only Carruth was active in its management. The business of the corporation was the leasing of automobiles and trucks. About 75% of the vehicles which it leased were purchased from Richard Motor Company, Inc. of Eunice.
When Carruth entered the leasing business in Lafayette, he left the motor company in Eunice, and Mr. George Sonnier became its manager.
Defendant testified that in June of 1969, the account of Richard Motor Company, Inc. in the plaintiff bank became overdrawn. To save the business, defendant Richard signed a note for $30,000 payable to the bank. However, a few weeks later the motor company was again overdrawn. Mr. Carruth, Mr. Sonnier and Mr. Richard, Sr. asked defendant Richard to again cover the overdraft, but he refused. Defendant says he made it clear he was not going to furnish any more funds to the business and he recommended they close the dealership. Although defendant refused to help, the remaining owners managed in some way to survive that particular crisis and the business still continues to operate.
Immediately prior to October 29, 1970, Richard Motor Company, Inc. deposited in its account in the plaintiff bank certain drafts upon the account of Royale Rental and Leasing Corporation, payable at Royale's bank in Lafayette. These drafts purported to represent the purchase price of new cars sold by Richard Motor Company to Royale. Instead of forwarding the drafts for collection, the plaintiff bank immediately credited the account of Richard Motor Company with the amounts of the drafts, as had been the bank's custom with this account. When these drafts reached the First National Bank in Lafayette, the balance in the account of Royale Rental and Leasing Corporation was insufficient for payment. Plaintiff bank was notified the drafts were being returned uncollected.
Mr. P. J. Baker, executive vice president of plaintiff bank, contacted Mr. George Sonnier of Richard Motor Company and requested that an amount sufficient to cover the uncollected drafts be deposited in the account of Richard Motor Company to prevent an overdraft in the sum of approximately $45,000. On being asked by Sonnier, Mr. Baker stated that a personal note from Dr. Leopold Richard, Jr. would be acceptable.
On the morning of October 29, 1970, Mr. Baker, accompanied by Mr. Sonnier and Mr. Carruth, went to the office of Dr. Richard in Lafayette. Carruth, or a secretary in his office, had previously telephoned the doctor to expect them. There is some dispute as to the details of the conversations preceding the signing of the note on that occasion, but the essential facts are clear.
Mr. Baker testified he explained to defendant that Richard Motor Company had deposited in its account in the plaintiff *852 bank certain drafts on Royale Rental and Leasing Corporation for vehicles sold by Richard to Royale and that the plaintiff bank had been notified by Royale's bank in Lafayette that the drafts were being returned uncollected because of insufficient funds. Baker explained that this default by Royale in the payment of the drafts was going to result in an overdraft of approximately $45,000 in the account of Richard Motor Company with the plaintiff bank.
Furthermore, Baker testified he stated to defendant Richard that he suspected a "kiting" operation by Royale Rental and Leasing Corporation and Richard Motor Company, whereby each was depositing the checks or drafts of the other to cover deficiencies in their respective banks, by taking advantage of the time necessary to clear the checks. Baker made no direct threats against Carruth, but he did state that someone could go to jail.
Carruth did not testify. George Sonnier testified essentially the same as Baker.
Following this discussion, Baker prepared a promissory note payable to the plaintiff bank and dated October 29, 1970. The amount of $45,000 was filled in by the defendant Richard, and he signed it. The note was also signed by Carruth and by Mr. L. P. Richard, Sr.
Defendant says he signed the note "because I thought Royale owed $45,000 and because I was semi-motivated, I guess, because I didn't want my brother-in-law, the-oretically, to go to the penitentiary."
Pursuant to the signing of the note, Baker issued a credit to the account of Richard Motor Company in the plaintiff bank in the sum of $45,000, which was sufficient to cover the overdraft caused by the uncollected drafts on Royale. Defendant Richard freely admits he knew that the funds represented by the note were to be deposited in the motor company's account in the plaintiff bank.
Approximately two months after the note was signed, the defendant Richard employed a certified public accountant to examine the books of Royale. This audit revealed duplicate sales of vehicles by Richard Motor Company to Royale Rental & Leasing Corporation, and a check kiting operation between the two. Each of the vehicles purchased by Royale was financed through GMAC, who paid Richard Motor Company direct by check. The auditor discovered that no checks were issued by Royale for the purchase of automobiles, where there was actually a valid purchase. However, checks were being issued by Royale to pay drafts sent to them by Richard Motor Company for automobiles which had already been paid for by GMAC. In other words, Richard was being paid twice for the same cars.
The auditor testified that after he discovered this situation, Royale's bookkeeper admitted a kiting operation between Royale and Richard Motor Company in an attempt to cover up these fictitious sales of vehicles, for which no consideration was actually paid or received. The scheme collapsed when a General Motors strike made it impossible to obtain new cars. Royale's leases provided that new cars would be furnished to lessees every six months. When Royale couldn't furnish new cars, many leases were terminated and Royale had no actual funds with which to pay GMAC the monthly installments. GMAC started to repossess the vehicles, and Royale collapsed financially. Shortly after the audit, Royale took bankruptcy.
ERROR OF FACT AS TO PRINCIPAL CAUSE OR MOTIVE
Richard's first defense is that he signed the note through error of fact, within the meaning of the following articles of our Civil Code:
"Art. 1821. That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none."
* * * * * *
*853 "Art. 1823. Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.
"Art. 1824. The reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falsely represented, there can be no valid consent.
"Art. 1825. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made."
In the present case, Richard says that when he signed the note he erroneously believed that Royale Rental and Leasing Corporation owed the drafts totaling about $45,000 for the purchase of automobiles from Richard Motor Company, when in truth and in fact Royale did not owe these drafts because it had received no consideration for them. Dr. Richard's position is that his principal motive for signing the note was to protect Royale, in which he owned 50% of the stock, and which he at the time thought was a successful business. He says he had no interest in protecting Richard Motor Company, in which he owned only a small amount of stock, which he knew to be in a bad financial condition, and which he thought it would be a waste of money to seek to save. Dr. Richard contends that if he had known about the fraudulent sales of vehicles, and that Royale did not actually owe the drafts, he would not have executed the note.
The first position of the plaintiff bank is that there was no error of fact by Dr. Richard. The bank notes the following facts. Dr. Richard owned stock in the motor company. His sister and father owned stock and his father received his livelihood from the business. It was the Richard Motor Company account with plaintiff bank which was overdrawn, and Dr. Richard knew the funds provided by the note were to be deposited in this account to cover the overdraft. The note was also signed by L. P. Richard, Sr., who owned an interest in the dealership but none in the leasing company. Although the trial judge did not give written reasons, plaintiff contends the judge must have concluded from the evidence that there was no error of fact, i. e., that Richard's principal motive for signing the note was not to protect Royale, but was simply to cover Richard Motor Company's overdraft.
We find it unnecessary to decide this close factual issue. For regardless of whether Dr. Richard's principal motive was to protect Royale, Mr. Baker did not know this, nor were the circumstances such that he is presumed to have known it. LSA-C.C. Articles 1826 and 1827 pertinently provide:
"Art. 1826. No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it.
"Art. 1827. But wherever the motive is apparent, although not made an express condition, if the error bears on that motive, the contract is void. A promise to give a certain sum to bear the expenses of a marriage, which the party supposes to have taken place, is not obligatory, if there be no marriage."
These articles had no corresponding articles in the Code Napoleon. They were added to our Civil Code in 1825, without comment in the Project. Litvinoff, Louisiana *854 Civil Law Treatise, Obligations, Book 1, Section 220, explains their rationale. He draws a distinction between the "cause" of a contract and the "motive" which prompts one party to bind himself. The "cause" is the end result known and sought by both parties. The "motive" is the subjective reason that induces a person to enter into a contract. Litvinoff gives an example of motive: "The one who borrows may do so in order to pay a debt, speculate in the stock market, or, perhaps, to build a new home." Since a contract is essentially an accord of wills, an error as to such motive is not grounds for rescission, unless both parties know it is the principal motive. In which case, such motive becomes the main reason or cause for both parties entering the contract, and error as to that motive voids the agreement for lack of the requisite mutual consent.
LSA-C.C. Article 1826 was applied in Jefferson Truck Equipment Company v. Guarisco Motor Company, 250 So.2d 211 (La.App. 1st Cir. 1971). There, the court rescinded a contract to purchase a crane, where the buyer erroneously believed it would life a certain weight, and the seller knew of such error and knew that this was the buyer's principal motive. See also Humble Oil & Refining Company v. Chappuis, 239 So.2d 400 (La.App. 3rd Cir. 1970).
Applying these rules to the present case, the evidence shows that at the time Richard signed the note, neither he nor Baker were aware of the fraudulent sales of vehicles. Both thought Royale actually owed the drafts and both were in error in this regard. But Baker knew the drafts were being returned uncollected and that this was going to cause an overdraft in the account of Richard Motor Company. Naturally, he was looking to the motor company and its owners to cover the overdraft. Baker knew that Dr. Richard had previously signed the $30,000 note in a similar situation. He knew the doctor, his sister and his father owned an interest in the motor company. When Sonnier asked Baker if he would again accept Dr. Richard's note, this appeared normal to Baker, since Dr. Richard was the only person with an interest in the motor company whose note the bank would accept. There is no evidence to show Baker knew the doctor had previously stated he would sign no more notes for the motor company, or that he knew Dr. Richard had any motive for signing the note other than to protect Richard Motor Company. Thus the plaintiff bank did not know, and cannot be presumed to have known, that Richard's principal motive for signing the note was to protect Royale, if indeed this was his principal motive. Therefore, under Article 1826, error as to this motive cannot invalidate the contract.
Defendant also cites LSA-C.C. Article 1832, which provides that "... when the information, which would have destroyed the error, has been withheld by the other party to the contract, it comes under the head of fraud, and invalidates the contract." This article clearly has no application. Baker revealed to Richard all facts which he knew at the time the note was signed. There was no withholding of information, no misrepresentation and no fraud by Baker.
LACK OF CONSIDERATION FOR THE NOTE
Defendant Richard argues next that there was no consideration for the note, since he had no interest in protecting Richard Motor Company. The facts show otherwise. Dr. Richard admittedly owned an interest in the motor company. His sister and his father also owned an interest, and Mr. Richard, Sr. received his livelihood from the business. The defendant had the same interest in signing the note for $45,000 that he had in signing the previous note for $30,000, to cover a similar overdraft. The business is still in operation and it must be presumed that it benefited from the signing of this note for $45,000. The evidence clearly shows a consideration for the note.
*855 THREATS OR DURESS
Richard's final defense is that he signed the note because of Baker's threat of criminal prosecution against defendant's brother-in-law, LSA-C.C. Articles 1850 et seq. The facts do not support this contention. Mr. Baker did not threaten prosecution against Mr. Carruth. He stated only that he suspected a kiting operation between Royale Rental and Leasing Corporation and Richard Motor Company. Baker said he could not prove the offense and did not know who was involved. We find the evidence is insufficient to show that Dr. Richard signed the note under threats sufficient to invalidate the contract.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.