UNITED STATES of America

v.

SAJARE INTERESTS, LTD. &
Esplanade Management, Ltd.

No. 86–1562.

United States District Court,
E.D. Louisiana.

June 30, 1987.

William D.M. Holmes, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Fernando J. Cuquet, Jr., New Orleans, La., for Sajare.

David S. Cressy, Metairie, La., for Esplanade.

## OPINION

CHARLES SCHWARTZ, Jr., District Judge.

This matter was tried to the Court and having considered the testimony, exhibits and submissions of the parties, and the applicable law, it rules as follows. To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as Conclusions of Law; to the extent any of the Conclusions of Law stated below constitute Findings of Fact, they are so adopted.

*Introduction*

Certain facts giving rise to this dispute are stipulated: On July 15, 1981, Brian Investments ("Brian"), a subsidiary of defendant Sajare Interests Ltd. ("Sajare"), represented by its President, Sam J. Recile, and George Freeman executed a document entitled "Agreement to Purchase" 613–617 Esplanade Avenue, New Orleans, Louisiana, for a purchase price of $330,000 (see agreement and conditions therein, attached to stipulations of fact). Freeman then assigned the agreement to defendant Esplanade Management, Ltd. ["Esplanade"], a Louisiana corporation of which he is the sole shareholder.

The agreement to purchase was modified by a letter agreement dated July 9, 1982

(see Schedule B attached to stipulation of facts) which was drafted and signed by George Freeman as President of Esplanade, and approved and accepted on behalf of Brian by its attorney, Fernando J. Cuquet, Jr. On the same date, the parties also executed a document which amended the agreement to purchase (see Exhibit C attached to stipulation of facts).

On July 16, 1982, at the closing of 613–617 Esplanade Avenue sale, Esplanade executed a promissory note to the Internal Revenue Service for $30,023.03, an amount equal to a portion of an unpaid balance of certain federal tax liabilities of Sajare. It is uncontested that at the same time, Sajare executed a promissory note in the amount of $99,590.82 in favor of Esplanade (copy of these notes are attached to the stipulation of facts). The Government as of the date of closing had not perfected on the record a lien for the sum of $30,023.03 as pertains to the property at 613–617 Esplanade Avenue.

On April 10, 1986, the United States filed this suit against Sajare and Esplanade for unpaid federal withholding taxes, federal insurance contributions and federal unemployment taxes plus penalties and interest due by Sajare. After suit was filed, the Government settled $38,239.72 of its claim against Sajare and now seeks to collect Sajare's remaining tax liability by way of the aforesaid promissory note executed by Esplanade.

The United States contends Esplanade's promissory note to the I.R.S. is valid and has a right to enforce the note as the beneficiary of a stipulation pour autrui. The government claims the stipulation pour autrui is contained in Schedule "A" attached to the amended purchase agreement entered into between Brian and Esplanade.

Esplanade does not deny it granted the I.R.S. the note but contends it did so because its president, Mr. Freeman, acting on behalf of the corporation, believed the I.R.S. had perfected a tax lien against 613–617 Esplanade Avenue for Sajare's liability. Since no lien of record existed on the Esplanade Avenue property, defendant reasons this amounted to an error vitiating its consent to the purchase agreement condition requiring it to pay Sajare's tax liability. Esplanade further argues it received no consideration for the note granted the I.R.S.

### Findings of Fact

Esplanade's contention that it did not receive consideration for the $30,023.03 note it granted the I.R.S. to pay Sajare's taxes is without merit. The documentary evidence and testimony elicited at trial demonstrate Esplanade was given ample consideration in exchange for executing the promissory note to the I.R.S. Mr. Freeman testified there were numerous extensions to the July 15, 1981 agreement to purchase 613–617 Esplanade Avenue and that the parties attempted to close the sale in July of 1981, but due to liens of $69,567.55 in excess of the $330,000 purchase price, a closing could not occur (see vendor's closing statement, defendant's Exhibit E4). The parties negotiated on and off for many months and finally agreed to a solution contained in the July 9, 1982 letter agreement and attached agreement (Schedule B and Exhibit C of the Stipulation of Facts). Pursuant to the agreement, Mr. Freeman paid $69,567.55 in liens against 613–617 Esplanade Avenue at the closing [1] and pursuant to the condition set forth in Schedule "A" attached to the July 9, 1982 agreement, Mr. Freeman granted the I.R.S. a $30,023.03 promissory note.

Although Mr. Freeman testified the only reason he agreed to give the I.R.S. the thirty thousand dollar promissory note was because he was led to believe that the Sajare I.R.S. tax liability encumbered the Esplanade property, the Court finds this argument lacks merit. First, Esplanade admits Sajare executed in Esplanade's favor a $99,590.58 promissory note at the same time Esplanade paid the aforesaid $69,567.66 in liens and delivered the $30,023.03 promissory note to the I.R.S. (see defendant's Exhibit E5). It is no coincidence the amount paid for liens and the

1. Clearly the sale could not have occurred without satisfaction of these liens.

promissory note to the I.R.S. equal $99,-590.58. Obviously, the $99,590.58 note constitutes consideration for Esplanade's payment of the property liens and granting the note to the I.R.S. Also, Mr. Recile as controlling officer of Brian Investments, the owner of 613–617 Esplanade Avenue, could attach any condition to the sale of that property he wished, including the obligation that Esplanade pay Sajare's tax liability. This again is ample cause or consideration for Esplanade to pay Sajare's tax bill.

The Court rejects Mr. Freeman's belief that the Esplanade property was encumbered by Sajare's tax liability pursuant to "representations" made by Mr. Recile. The aforesaid course of dealings demonstrates the contrary.

The requirement that Esplanade pay Sajare's tax liability as part of the agreement to purchase 613–617 Esplanade Avenue is also enforceable because it contemplates a benefit to the third party I.R.S., within Louisiana Civil Code Article 1978, entitled "Stipulation for a Third Party," which provides:

> A contracting party may stipulate a benefit for a third person called a third party beneficiary.

> Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.[2]

As the above article recognizes, contracting parties may agree that a third person not party to their contract may nonetheless derive benefits from the contract. A stipulation for a third party may be enforced by the third party. *Crowley v. Hermitage Health & Life Ins. Co.*, 391 So.2d 53, 55 (La.App. 3rd Cir.1980); *Logan v. Hollier*, 424 So.2d 1279, 1281–82 (La.App. 3rd Cir. 1982). A stipulation for the benefit of a third party must clearly contemplate the benefit to the person as its condition or consideration. *City of Shreveport v. Gulf Oil Corp.*, 481 F.Supp. 1, 4 (W.D.La.1975),

*aff'd.*, 551 F.2d 93 (5th Cir.1977) (*per curiam*).

■ Defendant does not dispute the existence of a stipulation pour autrui but rather contends Mr. Freeman was in error when he consented to pay Sajare's tax liability, thereby escaping the obligation to pay the promissory note to the I.R.S. In support of this argument, defendant cites Louisiana Civil Code Article 1949, entitled "Error Vitiates Consent," which provides:

> Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.

Under the above article, error may vitiate consent only when the alleged error affects *the cause of the obligation,* when a party's consent has been caused by the error. *Greater East Baton Rouge KOA, Inc. v. Lamar Corp.*, 481 So.2d 654 (La.App. 1st Cir.1985). *See* Marty & Raynaud, *Droit civil-Les obligations*, Part I, at 111–12 (1962).

Louisiana Civil Code Article 1967 states "Cause is the reason why a party obligates himself." In light of this principle, the civil law of Louisiana employs the doctrine of "cause" rather than the common law theory of consideration in determining the enforceability of obligations. Professor Litvinoff opines that cause must be defined in terms of motive, reason, purpose or end. 6 La.Civ. C. Tre. (Litvinoff) § 240. In the instant case, Mr. Freeman agreed to pay Sajare's tax liability as a condition for the purchase of 613–617 Esplanade Avenue. If Sajare's obligation was not paid, Mr. Recile as owner of 613–617 Esplanade Avenue would not sell the property. Mr. Freeman's motive, reason, purpose or end remained intact regardless of any error concerning Sajare's tax liability: His purpose was to purchase 613–617 Esplanade Avenue, which motivated his fulfilling all of Mr. Recile's conditions. Even if Mr. Freeman in fact believed there was a lien on the Esplanade property this did not "cause" him to agree to pay the tax liability. Thus,

---

**2.** Article 1978 was enacted by Act 1984, No. 331, Section 1, eff. Jan. 1, 1985 which reproduces Articles 1890 and 1902 (1870) and does not change the law.

the fact the sale would not have been consummated unless the tax liability was paid was the motivating cause for the execution of the note.

Moreover, relief for error may be granted to a party only when the other party knew or should have known the matter affected by the error was a cause of the obligation for the party in error or the reason why the party in error consented to bind himself. *See* La.Civ.Code Art. 1949 Comment (c) West Louisiana Stat.Ann. (1987). *Accord Tri-Parish Bank & Trust Co. v. Richards*, 280 So.2d 850 (La.App. 3rd Cir.1973), *writ denied*, 283 So.2d 499 (La. 1973) (Where error in principle motive of maker of note was unknown to payee, consent was not vitiated). Thus, relief for Esplanade under Article 1949 is also contingent upon proof Mr. Recile knew or should have known Esplanade gave the I.R.S. the promissory note because of Esplanade's erroneous belief the Sajare liability encumbered the Esplanade Avenue property. However, there is no evidence of Mr. Recile's awareness of Mr. Freeman's alleged "error," only Mr. Recile's limited assertions that all the obligations listed on "Schedule A" would have to be paid as a condition for the sale of 613–617 Esplanade Avenue and that the agreement and amended agreements spoke for themselves. According to the testimony of Mr. Michael Conway, the I.R.S. agent who attended the closing and collected Esplanade's promissory note, the Sajare tax liability was not a recorded lien as to the Esplanade Avenue property nor did he make any such representation. Therefore, the Court is unable to conclude that it is reasonable to believe Mr. Freeman executed the note in error.

Mr. Freeman's Esplanade defense that he believed there was a lien on the property also runs afoul of the precepts of Civil Code Article 1950 entitled "Error That Concerns Cause:"

> Error may concern a cause when it bears on the nature of the contract, or the thing, that is the contractual object or substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.

An error in the party's motive which is confined solely to the bounds of a party's "subjectivity" will not invalidate consent. La.Civ.Code Art. 1950 Comment (f) West Louisiana Stat.Ann. (1987).[3] Webster's defines subjectivity in part as:

> 4. The testing of truth solely by standards which can be applied only by the individual subject making the judgment (as by some subjective impression or feeling or by an arbitrary individual purpose or will to believe) instead of some objective criterion accessible to others (as logical reasoning, history, verification in generally accessible experience) or even by some traditional external authority frankly recognized as such.

Webster's Third New International Dictionary, Unabridged (1971). No objective evidence was proffered to explain why Freeman believed the Esplanade property was encumbered by the Sajare tax liability. Defendant was not told there was a recorded lien against the property nor is there any dispute the property was *not* so encumbered at the closing. Instead, defendant maintains he was somehow led to believe the Sajare taxes encumbered the property.

**3.** In coming to this conclusion, the redactors relied on Capitant De la Cause des obligations at 209–210 (1923) which states:

> Error makes the contract a nullible when it concerns the act of will through which the party bound himself. Otherwise, that act of will being complete and nonvitiated preserves its obligatory effect. As a consequence, an error which does not affect the manifestation of will remains inoperative. That is the reason why an error in the motive does not annul the contract even though it exerts a decisive influence on the obligation. A party

> who buys a horse because he erroneously believes that his own has perished, or a donor whose will is determined by an erroneous motive, will not have contracted had he been correctly informed; nevertheless, the sale or the donation are nonetheless valid. Although the motives rest in the subjective sphere of the individual, they no doubt prompt him to engage himself, but they nevertheless, remain beyond the contractual field, they are anterior to the act of will by which the party obligates himself; they are not a constitutive element of the act of will.

This bare allegation demands the conclusion at most, that Mr. Freeman's acting for Esplanade relied solely on his subjective reasoning to "believe" 613–617 Esplanade Avenue was encumbered by Sajare's tax liability.

Accepting *arguendo* defendant's subjective belief the property he was purchasing was encumbered by the Sajare tax liability, Mr. Freeman must have failed to read the documents associated with the closing of the Esplanade property, since such a lien never existed. Failure to read pertinent documents at the closing constitutes negligence on the part of Mr. Freeman, negligence for which he does not deserve relief. *Guaranty Bank & Trust Co. v. Jones*, 489 So.2d 368 (La.App. 5th Cir. 1986) (defendant who thought he was cosigning $6,000 promissory note and in fact was signing continuing guaranty indebting defendant in the amount of $14,121.97 to Guaranty Bank, granted no relief; court presuming mistake resulted from defendant's failure to read continuing guaranty document before signing it). *See* Huff, 53 Tulane Law Review 329 at 369 (1978) ("It is always negligence not to read a document before signing it when one is able to and is not prevented from doing so by the other party.")

For the reasons heretofore stated, the Court finds the note sued upon herein is a valid obligation, and defendant Esplanade Management, Ltd. is indebted to the United States for all sums due pursuant to the promissory note sued upon herein, to wit, the sum of $30,023.03 with statutory interest from July 16, 1982 until paid and 25% attorney's fees on principal and interest. The Clerk of Court is directed to enter final judgment in accordance herewith.